UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| GREGORY R. BOYKO, an individual; JEAN S. BOYKO, an individual; MAXINE F. SWAN, an individual; GREGORY R. and JEAN S. BOYKO, as Trustees of the Boyko Revocable Family Trust dated April 27, 2001; MAXINE F. SWAN and JEAN BOYKO, as Trustees of the Swan Family Trust dated January 13, 1978, | |
| | NO. 2:10-CV-1011 FCD KJN |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER |
| BENNING FINANCIAL GROUP, LLC, a California limited liability company; RANDY C. BENNING, an individual; ePLANNING SECURITIES, INC., a California corporation; FIDELITY BROKERAGE SERVICES LLC, a Delaware limited liability company, and DOES 1-100, inclusive, | |
| Defendants. | |
| _____/ | |

----oo0oo----

1

This matter is before the court on defendants Benning Financial Group, LLC ("BFC") and Randy C. Benning's ("Benning") (collectively "defendants") motion to stay action and compel arbitration.[1]  Plaintiffs oppose the motion.  For the reasons set forth below,[2] defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

This case arises out of a serious of contracts plaintiffs entered into with defendants.  Plaintiffs allege that in and prior to January 2004, Benning approached and solicited plaintiffs to open accounts with defendants and to permit defendants to invest plaintiffs' money in securities that defendants represented were known to be safe and proven. (Compl., Ex. 2 to Notice of Removal, filed Apr. 26, 2010, ¶ 11.) On or about January 16, 2004, Gregory R. Boyko and Jean S. Boyko (the "Boykos") executed and entered into a contract titled "Investment Consulting Agreement" with BFG, providing for a flat fee to be paid to BFG in the amount of $15,000.00 for "Business Consulting."  (Id. ¶ 12.)  On that same date, the Boykos, individually and as trustees of the Boyko Revocable Family Trust dated April 27, 2001 (the "Boyko Trust"), and Jean Boyko, as trustee of the Swan Family Trusts A and B dated January 13, 1978[3]

---

[1]     Only the Benning defendants have been served.

[2]     Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

[3]     The court notes that the caption of the complaint reflects a date of January 13, 1978, but the allegations in the complaint reflects a date of April 27, 2001.  (Id. ¶ 2.)

1  (the "Swan Trusts"), executed and entered into contracts titled
2  "Investment Consulting Agreements" with Benning on behalf of BFG.
3  (Id. ¶¶ 13-14.)  These agreements provided for an annual
4  percentage fee based on the value of the portfolio.  (Id.)  The
5  Investment Consulting Agreements did not contain provisions
6  mandating arbitration.  (See Exs. A-C to Ex. 2 to Notice of
7  Removal.)
8       Subsequently, on or about January 1, 2006, the Boykos,
9  individually and as trustees of the Boyko Trust, executed and
10 entered into a contract titled "Advisory Agreement" with Benning
11 on behalf of BFG for "financial planning" and "portfolio
12 management" services.  (Id. ¶ 15.)  That same day, Jean Boyko, as
13 trustee of the Swan Trusts, executed and entered into a similar
14 contract.  (Id. ¶ 16.)  These Advisory Agreements provided for an
15 annual percentage fee based on the value of the portfolio in
16 exchange for "non-discretionary" investment advice.  (Id. ¶¶ 15-
17 16.)  Pursuant to the contract, the clients would make all
18 decisions to buy, sell, exchange or hold cash securities in the
19 clients' accounts, and BFG would execute transactions only upon
20 the oral or written instruction of the clients.  (Id.)
21      The Advisory Agreements contained arbitration provisions.
22 (Ex. D to Ex. 2 to Notice of Removal, at 8; Ex. E to Ex. 2 to
23 Notice of Removal, at 8.)  Specifically, paragraph 19 of each
24 agreement sets forth in bold-faced font that "[t[he parties are
25 waiving their right to seek remedies in court, including the
26 right to jury trial," and that arbitration is final and binding.
27 (Id.)  The provisions also delineate the types of disputes
28 subject to arbitration:

3

        Any controversy or dispute which may arise between the Client and Advisor concerning any transaction or the construction, performance or breach of the Agreement shall be settled by arbitration.

(Id.)

On or about May 31, 2005, the Boyko Trust opened an investment account with BFG in the amount of $1,541,608.00. (Id. ¶ 17.) As of December 31, 2007, the net value of the Boyko Trust was $1,072,694. (Id.) As of August 31, 2008, the value of the account had fallen to $736,997, and as of October 31, 2008, the net value of the account was $4,001. (Id.) On or about June 30, 2005, the Swan Trusts opened in investment account with an initial deposit of $1,009,421. (Id. ¶ 18.) As of December 31, 2007, the net value of the Swan Trusts were $1,233,562. (Id.) However, as of August 31, 2008, the value of the account had fallen to $978,250, and as of October 31, 2008, the net value of the account was $292,581. (Id.)

Plaintiffs contend that prior to and during 2008, BFG and Benning executed trades and transactions within the account without the instruction, approval, or consent of the plaintiffs. (Id. ¶¶ 17-18.) Plaintiffs also contend that defendants engages in trades and transactions that were highly leveraged, speculative, risky and unsuitable given the sophistication, experience, risk tolerance, investment objectives, and financial position of the plaintiffs. (Id.)

Plaintiffs assert defendants knew of plaintiffs' lack of sophistication and knowledge and failed to properly explain how to read and interpret statements concerning the accounts. (Id. ¶ 19.) Plaintiffs further assert that defendants knew that they

4

1 lacked sufficient investment experience and financial acumen to
2 make informed decisions about the purchase and sale of
3 securities.  (Id.)  Moreover, plaintiffs allege that defendants
4 failed to disclose the actual risk and unsuitability involved in
5 the transactions recommended or entered into by defendants on
6 plaintiffs' account.  (Id.)

7     More specifically, plaintiffs allege that defendants
8 violated the agreements entered into by the parties by effecting
9 trades without specific authorization of plaintiffs.  (Id. ¶ 20.)
10 Plaintiffs further allege that defendants also violated the
11 agreements by executing transactions that were unsuitable for
12 plaintiffs' accounts in light of the nature of the account,
13 plaintiffs' financial situation and needs, and plaintiffs'
14 investment objectives.  (Id. ¶ 21.)

15     On February 26, 2010, plaintiffs filed a complaint for legal
16 and equitable relief in the Superior Court of the State of
17 California, in and for the County of Solano, alleging claims for
18 (1) breach of contract; (2) accounting; (3) fraud and
19 misrepresentation; (4) negligence; (5) breach of fiduciary duty;
20 (6) breach of implied covenant of good faith and fair dealing;
21 (7) declaratory relief; (8) violation of various state and
22 federal statutes; and (9) intentional and/or negligent infliction
23 of emotional distress.  Defendants removed the case to federal
24 court on April 26, 2010 and filed a motion to compel arbitration
25 and stay the action on June 14, 2010.
26 /////
27 /////
28 /////

**ANALYSIS**

**A.   Arbitration Clause**

Defendant moves to compel arbitration in this case on the basis of the arbitration clauses in the Advisory Agreements entered into between plaintiffs and defendants in January 2006. Plaintiffs oppose the motion, arguing that it is unclear whether their claims arise under the Advisory Agreements or the earlier executed Investment Consulting agreements, which did not contain arbitration clauses.

The determination of whether claims are subject to arbitration is governed by federal substantive law. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999); see Moses H. Come Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983) ("Federal law in the terms of the Arbitration Act governs that issue in either state or federal court."). The Federal Arbitration Act ("FAA") provides,

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Moreover, the FAA mandates that when an issue referable to arbitration is brought before it, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

"The FAA reflects Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." Simula, 175 F.3d at 719. It also

6

establishes that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone, 460 U.S. at 24-25; Simula, 175 F.3d at 719 ("The FAA embodies a clear federal policy in favor of arbitration."); Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 479 (9th Cir. 1991).

"[T]he FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Simula, 175 F.3d at 719 (citing Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218 (1985)). Further, agreements to arbitrate are "rigorously enforced." Id. The Ninth Circuit has explicitly provided that "the district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms." Id.[4]

In this case, the arbitration clauses at issue provide that "[a]ny controversy or dispute which may arise between the Client

---

[4] Plaintiffs also cite Metters v. Ralphs Grocery Co., 161 Cal. App. 4th 696, 701 (4th Dist. 2008), for the proposition that the FAA does not apply until a court has found that the parties entered into a valid contract under state law. In Metters, the court held that the offeree was not bound by the arbitration clause because the conduct of the offeror manifested an intent to obfuscate the grievance process, including the consent to arbitration, and the arbitration clause itself was confusing and "full of legalistic references" to the unattached binding arbitration policy. Id. at 702-03. As such, the court concluded that there was no valid agreement to arbitrate. In this case, plaintiffs fail to submit any evidence or argument to support invalidation of the arbitration clauses. Plaintiffs do not contend that defendants obfuscated the arbitration procedure or that the arbitration clauses in the Advisory Agreements were unclear or incomplete. Accordingly, the FAA applies to the court's analysis of arbitrability.

1 and Advisor *concerning any transaction* or the construction,
2 performance or breach of this Agreement shall be settled by
3 arbitration." (Exs. D-E to Ex. 2 to Notice of Removal (emphasis
4 added).) Plaintiffs' claims all arise from allegations that
5 defendants breached the agreements by executing transactions
6 without oral or written consent or authority of plaintiffs and by
7 recommending and executing transactions that were unsuitable for
8 plaintiffs' accounts and objectives. (See Compl. ¶¶ 20-21, 24,
9 30, 34.) All of these contested transactions occurred *after*
10 plaintiffs signed the Advisory Agreements containing the
11 arbitration clauses. As such, all of plaintiffs' claims "concern
12 transactions" entered into by defendants on behalf of plaintiffs
13 and are encompassed by the arbitration clauses. See Simula, 175
14 F.3d at 721-25 (holding that arbitration clause that applied to
15 "all disputes arising in connection with this agreement"
16 encompassed the plaintiff's antitrust, Lanham Act, defamation,
17 misappropriation of trade secrets, breach of contract, and breach
18 of state statute claims because they "touched matters" covered by
19 the contract); J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile,
20 S.A., 863 F.2d 315 (4th Cir. 1988) (holding that arbitration
21 clause embraced every dispute between the parties having a
22 significant relationship to the contract); see also Coors Brewing
23 Co. v. Molson Breweries, 51 F.3d 1511, 1515 (10th Cir. 1995).
24 **B.   Waiver**

25     Alternatively, plaintiffs oppose defendants' motion to
26 compel on the basis of their contention that defendants waived
27 their right to arbitrate by removing the action to federal court.
28 /////

1  Defendants contend that removal does not constitute waiver in the
2  Ninth Circuit.
3       "In the Ninth Circuit, arbitration rights are subject to
4  constructive waiver if three conditions are met: (1) the waiving
5  party must have knowledge of an existing right to compel
6  arbitration; (2) there must be acts by that party inconsistent
7  with such an existing right; and (3) there must be prejudice
8  resulting from the waiving party's inconsistent acts." United
9  Computer Sys., Inc. v. AT&T Corp., 298 F.3d 756, 765 (9th Cir.
10 2002); Hoffman Const. Co. v. Active Erectors, 969 F.2d 796, 798-
11 99 (9th Cir. 1992).  It is unlikeley that there has been any
12 prejudice where litigation has not progressed past the pleading
13 stages.  United Computer Sys., 298 F.3d at 765 (holding that
14 there was no prejudice, despite incursion of costs litigating the
15 case in state and federal court, because the litigation never
16 moved past the pleading stage and the issue of remedy was not
17 raised); see Saint Agnes Med. Ctr. v. Pacificare of Cal., 31 Cal.
18 4th 1187, 1203 (2003) (noting that merely participating in
19 litigation, by itself, does not result in a waiver); cf. Hoffman
20 Const., 969 F.2d at 799 (finding prejudice when plaintiff
21 withdrew its arbitration request and defendant was subjected to
22 the full litigation process in state court, including discovery,
23 a trial, and a monetary judgment).
24      The facts of this case do not support a finding of
25 constructive waiver.  *Assuming arguendo* that defendants' conduct

9

1  satisfied the first two conditions,[5] there is no prejudice to
2  plaintiffs.  The complaint was filed on February 26, 2010, and
3  defendants were served on March 26, 2010.  (Notice of Removal ¶¶
4  1, 4.)  On April 23, 2010, defendants filed and served their
5  Answer, disclosing their contention that plaintiffs' claims were
6  subject to the arbitration agreement.  Subsequently, on June 1,
7  2010, defendants' counsel sent a letter to plaintiffs' counsel,
8  reasserting the allegations in the answer and seeking a
9  stipulation to stay proceedings and compel arbitration; counsel
10 did not receive a response.  (Torngren Decl. ¶ 3.)  On June 14,
11 2010, defendants filed the pending motion.  No other motions have
12 been filed, the court has not issued a Pretrial Scheduling Order,
13 and no discovery has been undertaken.  (See id. ¶ 5.)  Moreover,
14 plaintiffs have failed to advance any argument that they would be
15 prejudiced by an order compelling arbitration.  As such, the
16 court concludes that the arbitration provisions have not been
17 constructively waived.

18    Plaintiffs' reliance on the Seventh Circuit's decision in
19 Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc., 50
20 F.3d 388 (7th Cir. 1995), is unavailing.  As an initial matter,
21 the Seventh Circuit does not apply the same test to constructive
22 waiver as the Ninth Circuit.  See Saint Agnes Med. Ctr., 31 Cal.
23 4th at 1203 n.6 (noting that the Seventh Circuit admittedly takes

---

[5] It is unlikely that defendants acted inconsistently with their right to arbitrate.  In their answer filed in state court on April 23, 2010, defendants asserted that the claims were subject to arbitration.  (Ex. 3 to Notice of Removal, ¶ 16.)  On June 1, 2010, defendants' counsel sent a letter to plaintiffs' counsel repeating the allegation in the answer that the claims were subject to arbitration.  (Decl. of William P. Torngren ("Torngren Decl."), filed June 14, 2010, ¶ 3.)

"the minority position" in holding that prejudice is not required to find waiver of right to arbitrate). Moreover, the facts before the Cabinetree court are clearly distinguishable from the facts in this case. In Cabinetree, the plaintiff filed an action in state court, and the defendant timely removed the case to federal court. Discovery proceeded, and almost 2,000 documents were produced. Eight months later, defendants "dropped a bombshell into the proceedings" by demanding that the district court stay the case pending arbitration of the parties' dispute. 50 F.3d at 389-91. The Seventh Circuit concluded that the defendant had waived its right to enforce the arbitration clause by first electing to proceed in federal court. Conversely, in this case, while defendants removed the case to federal court, they have consistently asserted its right to arbitrate in both the state and federal actions. Moreover, unlike Crabtree, no discovery or motion practice has taken place. Accordingly, plaintiffs' argument is wholly unpersuasive.[6]

## CONCLUSION

For the foregoing reasons, defendant's motion to stay action and compel arbitration is GRANTED. The parties shall proceed with arbitration in accordance with the provisions of the Advisory Agreements. All proceedings in this court are STAYED pending completion of those proceedings.

/////

---

[6] The court also notes that the Seventh Circuit has subsequently distinguished Cabinetree, noting that "removal alone [does] not amount to implicit waiver of [the] right to arbitrate." Halim v. Great Gatsby's Auction Gallery, 516 F.3d 557, 562 (7th Cir. 2008).

11

1    IT IS SO ORDERED.

2 DATED: August 9, 2010

3
   _____
4  FRANK C. DAMRELL, JR.
   UNITED STATES DISTRICT JUDGE